## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| JOHN DOE | |
| Plaintiff; | Civil Action No.: 1:17-cv-00732-SS |
| vs. | |
| THE UNIVERSITY OF TEXAS AT AUSTIN; DR. GREGORY FENVES, *individually and in his official capacity.* | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

## FIRST AMENDED VERIFIED COMPLAINT

This action concern's Plaintiff John Doe's, suspension from the University of Texas at Austin for allegations involving the sexual assault of another student, Jane Roe. John is claiming the University of Texas at Austin and Dr. Gregory Fenves suspended him in violation of the due process guarantees of the U.S. and Texas constitutions, and Title IX of the Education Amendments of 1972.

### Parties

1.     The Plaintiff, John Doe, is an undergraduate student at the University of Texas at Austin. He is a citizen of Texas and may be served through undersigned counsel. At all relevant times he was an undergraduate student at the University of Texas at Austin.

1

2.     Defendant, the University of Texas at Austin (hereinafter referred to as, UT or the University) is an agency of the state of Texas, and an institution of higher education. UT is located at 110 Inner Campus Drive, Austin, Texas 78705.

3.     Defendant Gregory Fenves is an adult individual and resident of Texas, who at all relevant times was the President of the University of Texas at Austin. President Fenves's place of business is 110 Inner Campus Drive Stop G3400, Austin, Texas 78712.

## Jurisdiction and Venue

4.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because the claims arise out of questions of federal Constitutional law under the 5th and 14th amendments.

5.     This Court has supplementary jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form a part of the same case or controversy.

6.     This court has personal jurisdiction over all the parties in this lawsuit because each party listed in the lawsuit resides in Texas.

7.     Venue is proper because the claims arise out of conduct occurring in this district.

## Statement of the Case

8.  John and Jane Roe, another student, had consensual sex in John's bedroom on August 16th, 2016 after attending a party together. John asked Jane if she wanted to have sex. *Jane said yes*.

9.      A few days later, Jane went to the University's Title IX Office and accused John of raping her.

10.     During the Title IX Office's investigation, and in the eventual university hearing, certain facts regarding Jane's consent were never in dispute:

      a.  Jane gave John affirmative verbal consent to have sex.

      b.  Jane was never unconscious during sex

      c.  There was no use of force or violence involved.

### University Investigation and Factual Background

11.     During the investigation, UT's Title IX office undertook to determine whether or not Jane's affirmative verbal consent was void because she had been "incapacitated" by alcohol.

12.     During the investigation the Title IX office determined the following facts:

      a.  In April of 2016, John and Jane were nearing the end of their sophomore year at UT. Jane invited John to be her date to her sorority's formal. John and Jane met in the afternoon before the formal and attended a pre-formal party together on a boat on Lake Austin.

      b.  Jane consumed alcohol on the boat. She told the University investigators that she consumed approximately five cups of sangria. After the boat party, she told investigators that she did not consume any more alcohol for the rest of the night.

3

c.  After leaving the boat, John and Jane traveled to Jane's sorority formal. They took a bus from Lake Austin back to Jane's sorority house, then another bus from the house to the formal. They arrived at the formal approximately two hours after the boat party ended.

d.  They spent approximately 1.5 hours at the formal. They left the formal and took another bus back to Jane's sorority house.

e.  They spent an hour at the sorority house. They checked in with Jane's sorority, and had something to eat.

f.  Then, John asked Jane if she wanted to go back to his apartment. Jane said she did. They walked to John's apartment from the sorority house.

g.  John and Jane both believed they were intoxicated on the walk to John's apartment.

h.  Once inside John's bedroom, John asked Jane if she wanted to have sex. Jane stated that she did.

i.  The two had consensual sex. Jane was conscious and participating throughout having sex. She gave John affirmative verbal consent. There was no force or physical violence involved.

j.  After having sex Jane slept the rest of the night in John's bedroom. When she left in the morning she asked John for some clothing to wear and John let her borrow something from his closet.

**University Definition of Sexual Assault and Incapacitation**

13.     The University General Catalog, Appendix D, is the University's policy on sexual

misconduct.[1]

14.     The University defines sexual assault, or more specifically rape as:

"**Rape:** The penetration, no matter how slight, of the vagina or anus with

any body part or object, or oral penetration by a sex organ of another

person, without the consent of the Complainant."

15.     The Sexual Misconduct Policy defines when consent is not effective:

"Consent is not effective if it results from: (a) the use of physical force, (b)

a threat of physical force, (c) intimidation, (d) coercion, *(e) incapacitation*,

or (f) any other factor that would eliminate an individual's ability to

exercise his/her own free will to choose whether or not to engage in sexual

activity."[2] (emphasis added).

16.     The ultimate issue in this case became whether or not Jane was

"incapacitated" in John's bedroom. The Sexual Misconduct policy provides the

following definition of incapacitation:

"**Incapacitation:** A state of being that prevents an individual from having

the capacity to give consent. For example, incapacitation could result from

_____

[1] Exhibit D

[2] Exhibit D at 21.

5

the use of drugs or alcohol, a person being asleep or unconscious, or because of an intellectual or other disability."[3]

## The Due Process Hearing

17.    The investigators found that there was sufficient evidence to believe Jane was incapacitated, and therefore reason to believe her consent was void.

18.    John disputed this finding and exercised his right under the University rules to a due process hearing.[4] The University assigned a disinterested hearing officer to preside over the hearing and make a ruling on whether or not Jane was incapacitated when she consented to sex.[5]

19.    A disciplinary hearing at UT is a quasi-trial proceeding. The hearing is presided over by a hearing officer who is typically a professor at the University. The accused student is permitted to give testimony, call witnesses, offer evidence, and cross-examine most witnesses against him. In a Title IX hearing, however, the accused student may not directly cross-examine the complaining witness. The accused student has no ability to subpoena witnesses, and in practice complaining witnesses rarely appear voluntarily at these hearings. The accused student also must advocate on his own behalf. He may have a lawyer present to advise him, but the lawyer may not speak on the record, or to anyone

---

[3] Exhibit D at 22.

[4] See generally Exhibit E at 39-47 (UT's Institutional Rules Chapter 11-600, et seq., for the details of UT's hearing procedure).

[5] The hearing officer was Dr. Conrad Fjetland, a lecturer in the chemistry department.

at the hearing other than the accused student. The hearing officer ultimately makes determinations on the issues of fact and credibility in the case, decides if there has been a policy violation, and if so, imposes a sanction.

20.     During the hearing, testimony was given by the University investigator on the definition of incapacitation. He was asked to define incapacitation without using the word 'capacity' in the definition. He answered:

> "A: Sure. So incapacitation would be lacking the ability to give consent based on all the aforementioned ways that one could be incapacitated or lack the ability."

21.     The same investigator was handed a photograph of Jane which was taken at the sorority formal. The investigator was asked if Jane appeared incapacitated at the formal. Kia Hill, the Assistant Director of Student Conduct, objected to the question and said, "[The university investigator] isn't an expert in determining if she's incapacitated or not."

22.     After considering the live testimony from the investigator, John and Jane, and one student witness from earlier in the night, the hearing officer determined as to the incapacitation of Jane: "the complainant made rational decisions throughout much of the evening prior to and after the sexual intercourse. These facts do not support her claim that she was incapacitated according to the definition as provided by [the University investigator]."

23.     The hearing officer made this finding using the definition of incapacitation that was provided by the University investigator. The investigator testified as to the University's written definition, and added that slurring words or unsteadiness (of foot) could be signs of incapacitation.

24.     On the issues of credibility in this case, the hearing officer further expressed doubt as to Jane's credibility regarding what she claimed to remember from the night (as did one of Jane's own sorority sisters, whom Jane had specifically asked the investigators to contact). The hearing officer also found inconsistencies in Jane's testimony regarding consent.

## Appeal to the President

25.     After the hearing, Jane appealed the hearing officer's decision to the President of the University.

26.     Under University Rules, the President has complete and unfettered authority to reverse or alter the decision of the hearing officer for any reason.[6]

27.     The University's appellate procedure is inconsistent with the U.S. Department of Education's recommendation for how schools should administer Title IX appeals, which suggests the grounds for appeal after a hearing should be narrow.

28.     John, Jane, and the Title IX office sent written arguments to the President regarding the issues on appeal. The President eventually provided a final written determination on April 12, 2017.

---

[6] Exhibit E at 47-51 (Chapter 11-800, et seq., for University appeal procedure.)

29.     The President's determination was based entirely on the written arguments provided by the parties, and the cold record from the hearing. The President however, reversed, altered, or ignored many of the hearing officer's findings of fact or determinations of credibility.

30.     The hearing officer found inconsistencies in Jane's testimony; the President found the inconsistencies immaterial.

31.     The hearing officer found John's testimony to be consistent and credible; the President found his testimony to contain inconsistencies about the amount of alcohol Jane consumed.

32.     The hearing officer followed the standard of incapacitation provided by the Title IX investigators and the University's Sexual Misconduct Policy; the President announced a new standard.

33.     The hearing officer considered a third-party witness's testimony about Jane's behavior during the night in the context of the proper timeline of events; the President misunderstood the timeline to wrongly imply Jane appeared more intoxicated at a later point in the night.

34.     The President also found, contrary to the University investigator's testimony, and for the first time that, "[u]nder University rules, someone who is intoxicated cannot give consent to sexual activity because they are incapacitated."

35.     The President decided then that because Jane was "intoxicated" when she gave affirmative verbal consent to sex, John was responsible for raping her.

36.     The President reversed the hearing officer's decision and ordered John be suspended for five semesters – roughly two calendar years.

## President's Role at the University

37.     Rape on university campuses is an issue which is frequently covered in the national media. Particular media attention is paid when a Title IX complainant sues a university alleging the university did not adequately investigate a complaint of rape, or adequately punish the accused student.

38.     One of the President's primary responsibilities is to represent and protect the University's political interests in the state and national media. He is responsible for the University's ability to attract potential students, donations from alumni, and grants to fund research and operations.

39.     President Fenves was appointed to his office in 2015 by the UT Board of Regents, including Chancellor William McRaven. Chancellor McRaven has stated publically that he views projecting an appearance as the leader in fighting sexual assault on campus is attractive to donors.

40.     In furtherance of projecting that appearance, President Fenves has appeared as an advocate for greater university crackdown on campus sexual assault. He has publically participated in victim advocacy campaigns, and he has directed university resources to support state legislation that would enact harsher consequences for students accused of sexual assault.

41.    President Fenves is one of the highest paid employees at the University of Texas at

Austin, however President Fenves does not have any special skills, training, or

experience in sexual assault investigation or adjudication.

42.    The father of the complaining witness in this case is a wealthy donor to the

University. He donated significant sums to the University just last year (2016), within

approximately one month of the allegations by his daughter. His biography is listed in

several University publications, and while the Title IX investigation was ongoing, he was

appointed as an advisor to the University.

### Cause of Action I
### *Procedural Due Process – No Meaningful Hearing*
### *U.S. Const. am. 5, 14.*

43.    John incorporates by reference each and every preceding paragraph as if fully

restated herein.

44.    In a disciplinary proceeding at a public university that involves suspension or

expulsion, the United States and Texas constitutions require that the accused student be

given notice of the charges against him, and a meaningful opportunity to be heard at a

meaningful time.

45.    In university sexual assault disciplinary hearings, the accused student is typically

entitled to:

   a.   Some kind of hearing.[7]

---

[7] *Plummer v. Houston*, ___ S.W.3d ___, No. 15-20350, *7 (5th Cir. June 26, 2017) (citing *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 158 (5th Cir. 1961)).

    b.   The opportunity to call witnesses.[8]

    c.   The opportunity to be advised by a lawyer at the hearing.[9]

    d.   The opportunity to cross-examine adverse witnesses.[10]

    e.   The opportunity to cross-examine the complaining witness, at least through the hearing officer.[11]

    f.   The opportunity to have questions of fact determined by a fair and unbiased fact finder.[12]

46.    Whether or not a university's disciplinary procedures comply with the requirements of due process depends on balancing the risk of an erroneous punishment, the cost to the University of implementing procedures to reduce that risk, and the cost of an erroneous punishment to the accused student, on a case by case basis.[13]

47.    UT's disciplinary process did not meet the requirements of due process in this case. At UT, an accused student is not allowed to compel testimony through compulsory attendance of witnesses at the hearing. The accused student, who is typically a teenager, or an adult in his early twenties, is expected to act as his own lawyer at the hearing. He

---

[8] *Flaim v. Medical Col. Of Ohio*, 418 F.3d. 629, 636 (6th Cir. 2005)
[9] *Id*; *Gomes v. Univ. of Maine System*, 365 F.Supp.2d. 6, 16 (D.Me. 2005).

[10] *Winnick v. Manning*, 460 F.2d 545, 549 (2d. Cir. 1972)*; Goldberg v. Kelly*, 397 U.S. 254 (1970)*; Flaim* at 636.

[11] *Winnick* at 549.

[12] *Sill v. Penn. State Univ.*, 462 F.2d 463, 469 (3d. Cir. 1972)*; Duke v. N. Tex. St. Univ.*, 469 F. 2d. 829, 833 (5th Cir. 1973).

[13] *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

may have an advisor with him at the hearing, but the advisor is not allowed to speak to anyone except the accused student. The advisor cannot advocate on behalf of the student. The complaining witness is not required to appear at the hearing, and cross-examination of the complaining witness is subject to the discretion of the hearing officer.  In addition, and most importantly in this particular case, all of the procedural safeguards that were in place at the hearing were overridden through the President's arbitrary exercise of his sweeping and unfettered authority on appeal.

48.     The University's appeal process, as a result of the President's entirely unfettered appellate discretion, renders the hearing nothing more than a façade for due process.

49.     The appeal process injects the risk that the President will make an incorrect fact or credibility determination due to his ineffective ability to make those judgments relative to the hearing officer University donor.

50.     The risk of error that the President's unfettered discretion represents is a violation of the Plaintiff's right to procedural due process because there is no cost to implementing a procedure to eliminate that risk. There is no cost to impose rules or to specify a standard of review that the President, or preferably a neutral arbitrator, is required to follow when considering Title IX appeals.

51.     In this case, President Fenves, as opposed to the hearing officer, strained the meaning of John's statements at the hearing to find them inconsistent. President Fenves ignored critical inconsistencies in Jane's testimony. President Fenves misunderstood the timeline of events and overemphasized the relevance of third-party witness testimony in purely he-said, she-said case.

52.     President Fenves made these alternate findings as to the weight of the evidence and the credibility of witness testimony based entirely on the reading of a cold record.

53.     Due process requires that the President be prevented from making these errors and instead be required to defer to the findings of fact and determinations of credibility that were made by the hearing officer.

54.     In failing to give deference to the findings and fact and credibility determinations made by the hearing officer, the President and the University have caused actual damages to John. His future career opportunities and personal reputation are imminently threatened with harm that has no remedy at law.

**Cause of Action II**
*Procedural Due Process – No Meaningful Hearing*
*Tex. Const. art 1 § 19*

55.     John incorporates by reference each and every preceding paragraph as if fully restated herein.

56.     Art. 1. §19 confers a substantially identical right to the federal procedural due process guarantee. For the reasons above that the Plaintiff's right to procedural due process has been violated, Plaintiff is entitled to relief against the Defendants for violations of the Texas Constitution.

57.     In failing to give deference to the findings and fact and credibility determinations made by the hearing officer, the President and the University have caused actual damages to John. His future career opportunities and personal reputation are imminently threatened with harm that has no remedy at law.

**Cause of Action III**
*Procedural Due Process – President Fenves's Political and Personal Bias*
*U.S. Const. am. 5, 14*

58.   John incorporates by reference each and every preceding paragraph as if fully restated herein.

59.   In this case, John was entitled to a meaningful opportunity to be heard at both the hearing and the appellate stage of the disciplinary process.[14]

60.   The precise requirements of procedural due process in the context of university disciplinary action require case by case analysis. However, a neutral adjudicator is essential.[15]

61.   The University did not provide a meaningful opportunity for John to be heard in the appeal. President Fenves is not a neutral adjudicator.

62.   As President of the University, President Fenves has biases and conflicts of interest that were the overriding force in his ultimate decision to reverse the hearing officer's findings.

63.   President Fenves cannot adjudicate a Title IX claim without bias because his role as the President of the University creates a direct and unavoidable conflict of interest.

64.   President Fenves is also biased to side with the complaining witness in a Title IX case because it protects the University's interest in continued receipt of federal funding.

---

[14] *Furey v. Temple Univ*, 884 F.Supp.2d 223, 261 (E.D.Pa 2012); *Doe v. Rector & Visitors of George Mason Univ.*, 179 F.Supp.3d 583, 589 (E.D.Va. 2016)

[15] *Sill v. Penn. State Univ.*, 462 F.2d. 463, 469 (3rd Cir. 1972); *Gorman v. Univ. of Rhode Island*, 837 F.2d. 7, 15 (1st Cir. 1988); *Nash v. Auburn Univ.*, 812 F.2d. 655, 665 (11th Cir. 1987); *Winnick v. Manning*, 460 F.2d. 545, 548 (2nd Cir. 1972).

65.    President Fenves also cannot adjudicate a Title IX appeal without bias because he protects his continued position as President of the University by appearing tough on students accused of sexual assault on campus.

66.    President Fenves is also an advocate for greater university crackdown on campus sexual assault.  Permitting the President to have final and unfettered authority over the outcome of a sexual misconduct investigation also allows advocacy to leak into what should be neutral decision-making.

67.    President Fenves' written determination evidences his bias. The President's interpretation of the facts and application of the University rules are diametrically opposed to the neutral hearing officer's findings.

68.    These omissions and misrepresentations in his written determination evidence bias on the part of the President. John did not have a meaningful opportunity to be heard at the appellate stage of the disciplinary process because President Fenves had no interest in listening to him.[16]

69.    The President's bias in his adjudication of Title IX appeals is intolerable to due process because there is no cost to eliminating that bias in these appellate decisions. There are innumerable more fair and less costly university employees that could be used to decide Title IX hearing appeals.

---

[16] Compare Exhibit B (President's determination) and Exhibit A (Hearing officer determination letter).

70.    As a result of the deprivation of a meaningful opportunity to be heard in the University appeal, John has sustained actual damages. His career opportunities and reputation is imminently threatened with harm that has no remedy at law.

**Cause of Action IV**
*Procedural Due Process – President Fenves's Political and Personal Bias*
*Tex. Const. art. 1 § 19*

71.    John incorporates by reference each and every preceding paragraph as if fully restated herein.

72.    Art. 1. §19 of the Texas Constitution confers a substantially identical right to the federal procedural due process guarantee. For the reasons above that the Plaintiff's right to procedural due process has been violated, Plaintiff is entitled to relief against the Defendants for violations of the Texas Constitution.

73.    As a result of the deprivation of a meaningful opportunity to be heard in the University appeal, John has sustained actual damages. His career opportunities and reputation is imminently threatened with harm that has no remedy at law.

**Cause of Action V**
*Substantive Due Process – Vagueness*
*U.S. Const. am. 5, 14.*

74.    John incorporates by reference each and every preceding paragraph as if fully restated herein.

75.    The vagueness doctrine arises out of the due process guarantees of the Texas and U.S. Constitutions. It applies to University rules and regulations, however university

17

rules and regulations do not need to be drawn with the same specificity as criminal laws.[17]

76.    A rule may be impermissibly vague if it either does not give a reasonable person notice of the conduct proscribed, or if it does not provide specific guidelines for enforcement.[18]

77.    The University's Sexual Misconduct Policy is unconstitutionally vague because it provides an entirely meaningless definition of the term incapacitation.

78.    It is impossible to tell what incapacitation means from the University's definition: "a state of being that prevents an individual from having the capacity to give consent." This definition is circular. The root of the word being defined has been used in the definition.

79.    The University investigator could not provide a coherent, non-circular definition of incapacitation at the hearing. The Assistant Director of Student Conduct said at the hearing that it requires an expert to determine whether or not someone is incapacitated.

80.    The rule plainly provides no standard for the University to determine when a person is or is not incapacitated. The rule can be enforced with complete and arbitrary discretion because its terms are so vague.

---

[17] *Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 674, 686 (1986).

[18] *U.S. v. Lanier*, 520 U.S. 259, 266 (1997) (barring a criminal statute that "forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application."

81.   As a result of attempting to enforce this policy, the President and the University have caused actual damages to John. His career opportunities and reputation is imminently threatened with harm that has no remedy at law.

## Cause of Action VI
### *Substantive Due Process – Vagueness*
### *Tex. Const. art 1 § 19.*

82.   John incorporates by reference each and every preceding paragraph as if fully restated herein.

83.   Art. 1. §19 confers a substantially identical right to the federal due process guarantee. For the reasons above that the Plaintiff's right to substantive due process has been violated, Plaintiff is entitled to relief against the Defendants for violations of the Texas Constitution.

84.   As a result of attempting to enforce this policy, the President and the University have caused actual damages to John. His career opportunities and reputation is imminently threatened with harm that has no remedy at law.

## Cause of Action VII
### *Substantive Due Process – Unconscionable Disciplinary Action*
### *U.S. Const. am. 5, 14*

85.   John incorporates by reference each and every preceding paragraph as if fully restated herein.

86.   The President's appeal determination in this case changed the standard of consent from the prior University standard, and the established norm. The President then applied this new standard to John's case ex post facto. The President wrote in

his appellate decision: "An intoxicated person cannot consent to sex due to incapacitation."[19]

87.     This is unconscionable because the President of the University cannot make up the rules as he goes.

88.     Beyond being a gross deviation from the standard of intoxication and consent in the law and at other universities, the President's assertion that an intoxicated person cannot consent to sex is also a gross deviation from a reasonable or viable policy.

89.     The President's interpretation of the University's sexual misconduct policy, that an "intoxicated person cannot consent to sex," is impossible to follow and enforce. The misconduct policy does not provide a definition of intoxication, and even if it did, students have no training, ability, or experience to identify whether or not a person is or is not intoxicated by observing their behavior alone.

90.     Actual incapacitation, marked by a loss of consciousness or the loss of the ability to perceive and appreciate reality, is the normal standard for when consent to sex is not effective because it can reliably be followed and enforced, and because it reflects the moral norm, as well as the law.

91.     The University and the President in this case made up a rule that could never consistently be enforced or followed. The President then applied that rule ex post facto to John. This conduct is a violation of John's right to substantive due process.

_____

[19] Exhibit B at 17.

**Cause of Action VIII**
*Substantive Due Process – Unconscionable Disciplinary Action*
*U.S. Const. am. 5, 14*

92.     John incorporates by reference each and every preceding paragraph as if fully

restated herein.

93.     Art. 1. §19 of the Texas Constitution confers a substantially identical right to the

federal due process guarantee. For the reasons above that the Plaintiff's right to

substantive due process has been violated, Plaintiff is entitled to relief against the

Defendants for violations of the Texas Constitution.

94.     As a result of attempting to enforce this policy, the President and the University

have caused actual damages to John. His career opportunities and reputation is

imminently threatened with harm that has no remedy at law.

**Cause of Action IX**
*Title IX: Erroneous outcome.*
*20 U.S.C. § 1681, et seq.*

95.     John incorporates by reference each and every preceding paragraph as if

fully restated herein.

96.     Title IX applies to an entire school or institution if any part of that school

receives federal funding. The University of Texas receives federal funding and is

covered by Title IX.

97.     Title IX "broadly prohibits a funding recipient from subjecting any person to

'discrimination' 'on the basis of sex.'" A university violates Title IX when it

reaches an erroneous outcome in the matter of a disciplinary proceeding, and the

reason for that erroneous outcome is gender bias.

98.     As a result of the forgoing, UT reached an erroneous outcome in the
disciplinary action in this case. It reached an erroneous outcome because the
process, and the people carrying out the process, are predisposed to favor a female
accuser over a male who has been accused.

99.     The President's written appeal evidences this gender bias. He disregarded
the facts of the case and made up a new standard for sexual assault in order to
achieve the female student's desired result: John's suspension.

100.    The University's investigation also evidences gender bias. The investigators
proceeded with a charge of sexual assault against John despite it being undisputed
that Jane gave affirmative verbal consent.

101.    The investigators also failed to follow up with one of Jane's friends, whose
statements were contrary to a sexual assault finding.

102.    This conduct is consistent with gender bias, and it is consistent with UT's
Blueprint for Campus Police on responding to sexual assault, which seeks to
undermine notions of impartiality, and causes biased investigations in favor of the
complainant.

103.    The University, President Fenves, and the Title IX office are motivated to
portray the University in local and national media as being tough on males who are
accused of sexual assault on-campus.

104.    The University, President Fenves, and the Title IX office are also motivated
to protect the reputation of the University by preventing the University from being

the target of a Title IX lawsuit from a female who has accused a male student of sexual assault.

105.    The University, President Fenves, and the Title IX office are also motivated to protect the University from federal financial penalties for failing to comply with the Department of Education's mandate to suspend or expel students for sexual assault.

106.    The forgoing constitutes intentional gender discrimination under Title IX and the Defendants have caused actual damages to John as a result of their conduct.

### Cause of Action X
### *Title IX: Selective enforcement.*
### *20 U.S.C. § 1681, et seq.*

107.    John incorporates by reference each and every preceding paragraph as if fully restated herein.

108.    A University is liable for gender discrimination under Title IX if its decision to initiate disciplinary proceedings is affected by the student's gender.

109.    The evidence obtained during the investigation in this case and at the hearing, indicated that two intoxicated college students had sex in John's bedroom on the night in question. John was intoxicated when he consented to have sex with Jane and vice versa.

110.    The male student was charged and punished for rape and the female student was not. The reason for this inequity is gender bias.

111.    If the standard for when a student is unable to consent to sex is truly as low as mere intoxication, then the evidence in this case supports the proposition that John was intoxicated and therefore unable consent to sex due to incapacitation.

112.    If both students were intoxicated, and therefore incapacitated, then both students were in violation of University rules. Under that logic they both should have been suspended if the school were not discriminating against males. If intoxication actually invalidates consent, then in this case the school is only enforcing their rules against the male student

113.    This is intentional gender discrimination under Title IX and it has resulted in disciplinary proceedings being initiated against John and not Jane because of John's gender. The Defendants have caused actual damages to John as a result of their conduct.

### Cause of Action XI
### *Declaratory Judgment*

114.    John incorporates by reference each and every preceding paragraph as if fully restated herein.

115.    John requests, as a result of ongoing and irreversible damages that the university's conduct is causing to his future career opportunities and earning potential, a declaration that: (1) the University's disciplinary process does not comply with the requirements of due process, (2) orders the President's decision on appeal suspending John be reversed because of the President's inherent bias, and inability to make findings of fact and credibility on appeal, and (3) orders John's

bar to registration at UT lifted, and any finding of responsibility for sexual assault on his record removed.

116.    John requests a declaratory judgment pursuant to 28 U.S.C. § 2201 because there is justiciable controversy between John and the Defendants and a declaratory judgment is necessary to prevent future conflict between the parties on the issues herein stated.

## PRAYER FOR RELIEF

117.    The University's decision to suspend John for five semesters will cause imminent and irreparable harm to his career and educational opportunities and goals. A suspension would harm his reputation and cause emotional harm. No legal remedy exists for these injuries.

WHEREFORE, the Plaintiff, John Doe, requests the Court:

a.    On the causes of action under 42 U.S.C 1983 for violations of substantive and procedural due process, retrain and enjoin the Defendants from enforcing a suspension against him, restrain and enjoin the Defendants from continuing to adjudicate Title IX appeals through the Office of the President, and award John such other relief at law or in equity to which he may be entitled.

b.    On the causes of action under Article 1 § 19 of the Texas Constitution, for violations of substantive and procedural due process, retrain and enjoin the Defendants from enforcing a suspension against him, restrain and enjoin the Defendants from

continuing to adjudicate Title IX appeals through the Office of the President, and award John such other relief at law or in equity to which he may be entitled.

c.  On the causes of action under Title IX of the Education Amendments of 1976, award John damages in an amount to be determined at trial including, past and future economic losses, loss of educational opportunities, loss of career opportunities, emotion distress and psychological damages, plus prejudgment interest and attorney's fees, expenses, costs, and disbursements, and any other relief at law or in equity to which he may be entitled.

d.  On the cause of action for declaratory judgment, a declaration stating: the University's disciplinary process does not comply with the requirements of due process; order the President's decision on appeal suspending John to be reversed because of the President's inherent bias, and inability to make findings of fact and credibility on appeal, restore John's enrollment at UT and remove any finding of responsibility for sexual assault from his record.

e.  John asks that he be granted all other relief as the Court deems just, equitable, and proper.

Respectfully Submitted,


<u>/s/ Brian Roark</u>

Brian Roark
SBN: 00794536
Botsford & Roark
1307 West Avenue
Austin, Texas 78701
Telephone: (512) 476 – 1900
Fax: (512) 479 – 8040
brian@brianroark.com

ATTORNEY FOR JOHN DOE